12560

FIRST NATIONAL CO. v. STRAK

(146 S. E., 240)

*Mr. J. Hertz Brown*, for appellant,

*Mr. Geo. H. Momeier*, for respondent.

January 15, 1929.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE.

This is an appeal from an order of his Honor, Judge T. J. Mauldin, changing the place of trial of the above case from Greenville County to Charleston County. The complaint set out: An ordinary action for the foreclosure of a real estate mortgage which secures certain notes dated September 5, 1925—one for $150, due November 5, 1925, and four more each for $225, due April 5, 1926, October 5, 1926, April 5, 1927, and October 5, 1927, respectively. The alleged notes provided for interest and attorneys' fees in the usual form. The mortgage covered the following real estate: "All that lot, piece or parcel of land in the County of Greenville. State of South Carolina, known and designated as Lot No. 931 of Plat No. —— of the property of the Tryon Development Company, known as Lake Lanier, made by George Kershaw, Civil Engineer, and duly recorded in the office of the Register of Mesne Conveyance for said County in Plat Book No. ——; page ——; that the said mortgage was thereafter duly filed for record in the office of the Register of Mesne Conveyance for Greenville County on ——, and was thereupon duly recorded in Mortgage Book 170, at Page 94, reference being herewith prayed to the record of the said mortgage for its terms and conditions." That thereafter, before maturity of any of the said notes and mortgage, for value, the Tryon Development Company transferred and assigned the said notes to plaintiff under the terms of a certain trust agreement dated October ——, 1925, and duly recorded in the office of the register of Greenville County, in Mortgage Book 64, at page 1. It is further alleged that defendant executed the notes and mortgages to Tryon Development Company.

The action was begun regularly in Greenville County, and the defendant was served in Charleston County on March 22, 1927.

The defendant answered the complaint on the merits on April 11, 1927. The answer was in effect a general denial,

and alleged that defendant was never the owner of the real estate covered by the mortgage.

On April 30th, defendant served the following notice accompanied by the following affidavit to which the plaintiff made the return hereinafter set out:

## NOTICE OF MOTION

"To John Hertz Brown, Esq., plaintiff's attorney:

"Please take notice that on the affidavit attached and upon the complaint in this action, the undersigned will move the Court at the next term thereof to be held at Greenville, in the County of Greenville and State aforesaid, on the 13th day of June, 1927, at 10:00 o'clock a. m., or as soon thereafter as counsel can be heard, for an order changing the place of trial in this action from the County of Greenville to the proper County, viz.: the County of Charleston, where the defendant resides."

## DEFENDANT'S AFFIDAVIT

"Personally appeared before me Stephen Strak, the defendant above named, who, being duly sworn, says that he is and has been for a number of years a resident of the City of Charleston, in the County of Charleston and State aforesaid; that the above entitled action has been commenced against him in the County of Greenville and State aforesaid. That it appears by the complaint therein that it is a suit on promissory notes, and for the foreclosure of a mortgage on the land therein described, known as Lot No. 931 of Plat No. —— of the property of the Tryon Development Company at Lake Lanier, in the County of Greenville and State aforesaid, given to secure the payment of said notes. That the defendant is informed that the Court is without jurisdiction to hear and determine this cause in the County of Greenville, as he is a resident of the County of Charleston, and is not and never was the owner of the lot of land de-

scribed in the complaint, and therefore could not have legally executed a mortgage on same to Tryon Development Company as therein alleged. That the Tryon Development Company has never conveyed said lot of land to this defendant, but as appears by the record of the R. M. C. Office for Greenville County, same was conveyed by Tryon Development Company to Christeena R. White by deed recorded on December 1st, 1925, in Deed Book 122, at page 54, of said office, and this defendant is informed that she is still the owner of said lot. That the history of this defendant's dealings with the Tryon Development Company is as follows: On September the 15th, 1925, he entered into a contract with the company to purchase Lot 931, at Lake Lanier, and he holds a receipt or agreement for the purchase of said lot in which he agreed to pay three hundred dollars of the purchase price of same in thirty days, and the balance of the purchase price at the times alleged in the complaint. That said receipt or agreement also contained the following:

" 'Money refunded if lot is already sold.'

"That at the time that he made the contract with said company and executed the notes and mortgage it was agreed between the said company and himself that when he made the first payment of three hundred dollars, he would get a deed of said lot 931. That he paid said sum of three hundred dollars, as shown by promissory note so marked in his possession, but he has never received a deed conveying said lot to him, for the reason that the company had conveyed the same to Christeena R. White, hereinabove mentioned. That on October the 6th, 1925, Mr. Clarence F. Peters, of Tryon, North Carolina, who had charge of the Deed Department of the company, sent him a deed to Lot 932, instead of Lot 931. That, by letter dated November the 4th, 1925, this defendant returned this deed, saying that he had purchased Lot 931 and did not want a deed to 932, and asked that the three hundred dollars that he paid be returned to

him. That same was not returned, and he then placed the matter in the hands of his attorney, Mr. George H. Momeier, of Charleston, S. C., who, on March the 31st, 1926, wrote Mr. E. O. Victor, Director of Sales of Tryon Development Company, at Tryon, North Carolina, stating that, inasmuch as he had sent a deed for the wrong lot and Lot Number 931, which this defendant had agreed to purchase, had been sold to another party, the contract was null and void and that he was entitled to a return of the three hundred dollars so paid, with interest. That in reply to said letter of March 31st, 1926, his attorney received a letter dated April 1st, 1926, from Mr. E. O. Victor, Director of Sales, which reads as follows:

" 'Replying to your letter of March the 31st, relative to Lot 931 sold to Mr. Stephen Strak:

" 'The large amount of business that we had at Lake Lanier last summer in a short space of time caused the double selling of Lot 931, and inasmuch as Lot 932 is so much more desirable, I tried to get Mr. Strak to accept it, but he refused to do so. My next effort is to get the other party sold Lot 931 to accept Lot 932, which I know she will do so as soon as we can get her to the property. It so happens that she is a lady who is employed and only has Sunday in which to make the trip. Due to the fact that she lives in Asheville may delay a final action on this exchange, but I feel sure we can accomplish the results that will please your client.

" 'Trusting that you realize our desire to make this condition right for all concerned, I am,

" 'Yours very truly,
" '[Signed]  E. O. VICTOR,
" 'Director of Sales.'

"This defendant therefore asks that inasmuch as he is a resident of the City and County of Charleston, and is not the owner of the lot of land described in the complaint and

the suit is on the promissory notes set forth in the complaint, and the Court of Greenville County being therefore without jurisdiction, that the place of trial of this action on the promissory notes be changed from the County of Greenville to the proper county, viz.; the County of Charleston, where the defendant resides."

### PLAINTIFF'S RETURN

"The plaintiff, making its return to the notice and affidavit for change of venue herein, refers to the complaint as establishing the nature of its cause of action;·

"Further answering the affidavit filed with the notice, plaintiff alleges that it had no connection whatever with the Tryon Development Company other than that set out in the trust agreement referred to in Paragraph 4 of the complaint, reference to which is again prayed; that it knows nothing, therefore, about the details of the dealings between the defendant and the notes and mortgage under the trust agreement above referred to; that the notes and mortgage purport to bear the signature of Stephen Strak, and that the mortgage was duly recorded in the R. M. C. Office for Greenville County, as set out in Paragraph 3 of the complaint;

"Further answering the said affidavit, plaintiff alleges that the foreclosure of the mortgage was instituted on March ——, 1927, the summons and complaint having been served on the defendant at Charleston, S. C., March 22, 1927; that there appears on record in the office of the Register of Mesne Conveyance for Greenville County, S. C., a deed from Christeena R. White to the Tryon Development Company, dated December 17, 1926, recorded January 7, 1927, in Deed Book 108, at page 430, by which the said Christeena R. White conveys Lot No. 931 to the Tryon Development Company;

"Plaintiff further alleges that even though a deed has never been delivered to Stephen Strak by the Tryon Development Company, both the said Stephen Strak and the Tryon Development Company are estopped from denying title in Stephen Strak by reason of the mortgage given by Stephen Strak and accepted by the Tryon Development Company and transferred for value before maturity to this plaintiff;

"That even though Christeena R. White at one time held title to Lot No. 931, the reconveyance by her to the Tryon Development Company could inure to the benefit of no one except the said Stephen Strak, and through him by his mortgage to plaintiff."

The Code of Civil Procedure, Vol. 1, has the following provision:

"Section 382. (382) *Changing Place of Trial.*—The Court may change the place of trial in the following cases:

"1. When the county designated for that purpose in the complaint is not the proper county.

"2. When there is reason to believe that an impartial trial cannot be had therein.

"3. When the convenience of witnesses and the ends of justice would be promoted by the change.

"When the place of trial is changed, all other proceedings shall be had in the county to which the place of trial is changed, unless otherwise provided by the consent of the parties, in writing, duly filed, or order of the Court; and the papers shall be filed or transferred accordingly."

It will be seen that the order of Judge Mauldin can only be referred to Subdivision 1 of the above statute, as Subdivisions 2 and 3 are manifestly inapplicable.

So the problem before the Court is: Was Greenville County the proper county for the trial of the case at bar?; and this involves a construction of the law applicable, the pleadings, affidavit, and return.

The Code of Civil Procedure applicable is as follows:

"Of the Place of Trial of Civil Actions

"(376) Section 1. *Actions to be Tried Where Subject Matter Situated.*—Actions for the following causes must be tried in the county in which the subject of the action, or some part thereof, is situated, subject to the power of the Court to change the place of trial, in the cases as hereinafter provided:

"1. For the recovery of real property, or of an estate or interest therein, or for the determination in any form of such right or interest, and for injuries to real property.

"2. For the partition of real property.

"3. For the foreclosure of a mortgage of real property.

  \*   \*   \*   \*   .\*   \* "

It will be noted that an action for foreclosure *must be tried* in the county in which the mortgaged premises lie. We can see the wisdom of this statutory provision, and it would be an intolerable burden in the sale or mortgaging of real estate to be compelled to go to other counties in order to ascertain the status of a foreclosure suit of lands wholly in one county. The Legislature having shown its wisdom in making this law, it would not be fitting for the Court to fritter away by reasoning and deduction the plain provision of this statute.

The words "must be tried" have been held to be imperative and cannot be disregarded. *Trapier v. Waldo,* 16 S. C., 276. *Silcox v. Jones,* 80 S. C., 484, 61 S. E., 948, holds: This was action for foreclosure, and in this case the Court held that the action must be brought in the county in which the land is located, and that a mortgagor cannot give the Court jurisdiction in any other county by consent to make a decree of foreclosure in a case commenced in such other county.

In the above case the Court cited the following cases: *Ware v. Henderson,* 25 S. C., 386; *Steele v. Exum,* 22 S. C., 276; *Bacot v. Lowndes,* 24 S. C., 392—on the proposi-

tion that an action for foreclosure must be commenced in the Courts of the county where the property is located.

The following cases cited by appellant are in point: *Pierce v. Marion County Lumber Co.,* 103 S. C., 261, 88 S. E., 135; *Stuckey v. D. W. Alderman & Sons,* 107 S. C., 426, 93 S. E., 126; *Barrow v. Gowdy,* 114 S. C., 122, 103 S. E., 477.

In the case at bar, the contention of the plaintiff is that it has a mortgage on the tract of land set out in the complaint and in the mortgage. The defendant contends that this is not an action for foreclosure, but is in effect simply an action for debt.

The only way to determine this matter at issue between the parties is by a trial and not on an *ex parte* showing on affidavits; in other words, in the manner provided by law in an action to foreclose the mortgage on real estate—the plaintiff contending that there was such a mortgage and the defendant contending that there was no such mortgage.

It is a familiar principle of law that the character of an action is primarily fixed and determined by the allegations of the complaint. The complaint here is for foreclosure, and that fixes the nature of the action as being one for foreclosure.

Such being the case, the statute above quoted as well as the reason of the same require that the action be tried in Greenville County. Even if the defendant should finally win out on his contention that there was no mortgage, the record of such finding ought to be in Greenville County so that any one searching the record could ascertain without a trip to Charleston how this mortgage was disposed of; as in after years a prospective buyer or lender of money seeing the mortgage would naturally inquire the result of the foreclosure, and it would be a hardship and unnecessary expense to have to send to Charleston for this information, as the record would be in Charleston County and the lot of land in Greenville County.

If defendant gave a mortgage purporting to cover land in Greenville County, he has only himself to blame if he has to meet the issue in that county; defendant is presumed to know the law that a mortgage must be foreclosed in the county in which the land is located. The lower Court was therefore in error in removing the case to Charleston County.

The judgment of this Court is that judgment of the lower Court be reversed, and that the case be remanded to Greenville County for further proceedings.

Mr. Chief Justice Watts and Messrs. Justices Cothran, Blease and Stabler concur.