## SHELL PETROLEUM CORPORATION v. MOORE.

### No. 5893.

Circuit Court of Appeals, Fifth Circuit.
Feb. 16, 1931.

Cyrus S. Gentry, of Houston, Tex. (Thompson, Mitchell, Thompson & Young and Cyrus S. Gentry, all of Houston, Tex., on the brief), for appellant.

Geo. E. Holland, of Beaumont, Tex., for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action by the appellee against the appellant. The appellee's amended petition, after alleging his ownership of described land in Cameron parish, La., and the existence of methods of discovering evidences of oil beneath the surface of land by going upon the land, setting up machines thereon, burying beneath the surface charges of dynamite, or other explosives, and exploding the same, with the result that vibrations so caused would be recorded by the machines mentioned, whereby information regarding the presence of oil within the territory covered by the operations would be furnished to the person carrying on such operations, made the following allegations:

"That about the time hereinbefore stated the said defendants were engaged in the locality of the lands of the plaintiff hereinbefore mentioned, in making tests for the discovery of the presence of oil in that locality, and that it desired to make tests upon all lands in said locality, and had acquired rights in certain lands in said locality, and the right to exploit the same and test the same for oil in the manner hereinbefore set out, and was engaged in that line of operation in said locality.

"After said tests had been made and information given by same has been received, should said lands not show evidences of holding beneath their surface oils and petroleum, their lease hold value and their value for oil purposes is greatly diminished or entirely destroyed. Whereas, if said lands revealed the presence of oil under said tests at certain places thereon, then the particular localities at which said oil is located are extremely valuable for oil producing purposes, and their lease hold value is very great, and the information in regard to same is of great value to the person having said information as a guide to future contracts and obligations, and the persons making said tests have such exclusive information.

"That about the day of the date hereinbefore set out the said defendant without right in law or fact, and in the commission of a trespass and wrong entered upon the lands of the plaintiff hereinbefore set out, and took exclusive possession thereof for that purpose set up and maintained thereon at various places its machines, instruments and implements used for that purpose, went on the same with its employees, dug all necessary holes and excavations, buried all necessary charges of dynamite and exploded the same, and in all things fully carried out its usual and customary operations, and received and recorded all the information and knowledge furnished thereby in regard to and connected with the presence of oil upon all of said lands, and fully exploited and tested all of said lands for oil, and obtained by said operations all the knowledge and information furnished by such tests, all of which it acquired and now has and exclusively holds, and all of which operations were carried on and information and knowledge obtained wrongfully without right in law or fact, without the permission and against the protests of plaintiff, and to his great damage as hereinafter shown.

"That the possession and use of said land and the rights and privileges so taken and used and converted by the defendant, as hereinbefore shown, and the right to do the things done by the said defendant upon and concerning the lands and properties of the plaintiff, as hereinbefore shown, was at said time of the reasonable market value of ten ($10.00) dollars per acre upon all of said

lands, and the taking and use of said lands by the defendant, and the possession and use of said property and taking of said rights, as hereinbefore shown, caused this plaintiff damage in said sum.

"Plaintiff would further show to the court that before entering upon said lands for the purpose hereinbefore shown, and before doing the things thereon, and making the tests thereon, as hereinbefore shown, the said defendant, through its agents, Mr. Merritt and Mr. Long, and other representatives approached the plaintiff for the purpose of making and in the effort to make a contract to acquire lawfully and own that right, and receive of and from the plaintiff a stated price under which and upon the payment of which the plaintiff would confer upon said defendant in legal manner all of said rights and privileges, and that said information and effort to contract was made and said negotiations entered into before the wrongful entry upon said lands by the defendant, as hereinbefore shown, and the defendant had received said price from the plaintiff and was at the time considering same and the advisability of entering into said contract, and that at said time and for said purpose plaintiff had made to the defendant a price of ten ($10.00) dollars per acre upon all of said lands, for which sum it would give and grant in legal manner to the defendant the right to enter upon said lands and make the tests made by it and carried on by it, as heretofore shown.

"That before entering upon said lands and before doing the wrongs and things herein complained of as hereinbefore charged, the defendant was fully made acquainted with and knew the price and value placed upon said right and use by the plaintiff, and the value of the same as fixed by the plaintiff, and the price at which the plaintiff would convey the same to the defendant, and had received from plaintiff the price of ten ($10.-00) dollars per acre for said right as an offer, and in entering upon said lands and doing the things thereon hereinbefore shown, with said knowledge and information and offer the acts of the defendant constituted an acceptance of the offer made to it by plaintiff upon the terms and price stated by plaintiff, and obligated and bound the defendant to pay for said right the price fixed thereon by the plaintiff as given to it, and by the doing of said things the defendant obligated and bound itself to pay to the plaintiff said sum of money per acre so fixed and stated at the time, and is obligated and bound to pay to plaintiff said sum of money for said right, and this plaintiff so prays in the alternative."

By pleading, the appellant raised the question of the appellee's right to maintain the suit in the court below. A jury being waived by written stipulation, the court rendered judgment in favor of the appellee. The record contains no bill of exceptions or statement of the evidence. It contains a memorandum opinion rendered by the trial judge, from which it appears that the amount awarded by the judgment was what was found to be the lease value of the land mentioned. That opinion contains the following:

"The evidence here develops that the defendant wrongfully entered upon the plaintiff's land and made explorations upon it in the way of 'shooting' the land to determine the presence of oil. Such right is incident to the usual mineral lease.

"Prior to that time negotiations, extending through a period of several months, had been conducted between the parties, but no agreement was reached, and therefore no permission given for entry upon the land. The plaintiff was contending for a down payment of $10 per acre for the 2420 acres he then owned. The terms were not acceptable to the defendant, and the negotiations seem to have been abandoned."

The record shows that the judgment was based on a trespass committed on land located in Louisiana. An action for trespass to land in another state is not maintainable in Texas, because the Supreme Court of that state has recognized and enforced the generally prevailing rule that such an action is not maintainable in a jurisdiction other than the one in which the land is located. Huntington v. Attrill, 146 U. S. 657, 670, 13 S. Ct. 224, 36 L. Ed. 1123; Morris v. Missouri Pacific Ry. Co., 78 Tex. 17, 14 S. W. 228, 9 L. R. A. 349, 22 Am. St. Rep. 17; Missouri Pacific Ry. Co. v. Cullers, 81 Tex. 382, 17 S. W. 19, 13 L. R. A. 542; Texas & Pacific Ry. Co. v. Gay, 86 Tex. 571, 26 S. W. 599, 25 L. R. A. 52; Ellenwood v. Marietta Chair Co., 158 U. S. 105, 15 S. Ct. 771, 39 L. Ed. 913; Livingston v. Jefferson, 15 Fed. Cas. page 660, No. 8,411.

For the appellee, it was contended in effect that the action was maintainable on the ground that what was done by the appellant amounted to the conversion by it of the property right of the appellee to acquire information as to the presence of oil underlying the surface of the latter's land by making thereon scientific tests commonly known as "shooting" the land. The trespass which the court's opinion shows it found was committed did

not have the effect of a taking or converting by the appellant of a property right of the appellee. The appellee's right to the exclusive possession and use of his land was the same after the trespass as it was before. No part of the fee-simple owner's property right in land is taken or converted by a trespass which violates that right. The right of action for wrongfully entering upon and using appellee's land was one in trespass, not one for converting a thing which was susceptible of being taken and carried away. The contention under consideration is not sustainable.

■ Another contention made in behalf of appellee is that appellant's acts in entering upon and "shooting" appellee's land constituted an acceptance by the appellant of an offer of the appellee to grant that right for a stated consideration per acre. This contention is not sustainable, as the record does not disclose the evidence adduced in the trial, and the court's opinion shows that it found that "no agreement was reached, and therefore no permission given for entry upon the land." The record negatives the conclusion that appellant's entry upon and use of appellee's land constituted anything other than a trespass. As an action based on that trespass was not maintainable in the court below, the judgment rendered was erroneous.

That judgment is reversed.